569 So.2d 1191 (1990)
James McGEE
v.
STATE of Mississippi.
No. 07-KA-59048.
Supreme Court of Mississippi.
October 24, 1990.
*1192 C. Collier Carlton, Jr., Farese Farese & Farese, Ashland, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court.

I.
Today's appellant challenges twin convictions of armed robbery and aggravated assault and presents troublesome questions regarding the trial court's handling of the prosecution's purported impeachment of his credibility through evidence of prior and unrelated criminal acts. Following settled reading of Rule 609, Miss.R.Ev., at trial, the Court must articulate on the record his findings and balancing of a series of factors we have found to facilitate weighing probative value against unfair prejudice. Because the trial judge failed of this process, we must reverse and remand for a new trial.

II.
On the evening of November 26, 1986, James McGee, age 57, encountered three young sailors from Millington Naval Air Station in rural Alcorn County off Highway 72, an encounter which saw Michael Allen Glaser shot several times with a .22 pistol.
Glaser and his two friends, James Reynolds, Jr., and Ronald Busby, were on their way to spend the Thanksgiving weekend with Reynolds' father in Tippah County, Mississippi. With Busby at the wheel, the three had driven along Highway 72, turning off on Bass Road (sometimes Overton Hill Road) to go to see Reynolds' stepsister. Fate first intervened in the form of water covering the road and, after a futile effort to ford the stream, they turned back, only to find that their car had a flat tire. Busby inched the car along back toward Highway 72 until at last it would go no further, so he pulled off onto the shoulder of the road.
Some twenty or thirty minutes later, James McGee drove up. The sailors asked for assistance, indicating that Reynolds' father lived only a couple of miles away. McGee responded by taking Reynolds to his father's home and then returning to the tire-flattened car. It is not clear who said what to whom, for at this point the stories diverge radically. The sailors say that McGee robbed them at gun point and fired four shots at Glaser. McGee claims that, after he left Reynolds at his father's house, he returned to the scene  saying he was on his way to his home in Pocahontas, Tennessee  when Glaser pulled a gun. McGee says a scuffle ensued and that in the course of the scuffle the gun went off.
At any event, on January 22, 1987, the Alcorn County Grand Jury returned indictments charging McGee with armed robbery, Miss. Code Ann. § 97-3-79 (Supp. 1986), and aggravated assault, Miss. Code Ann. § 97-3-7(2) (Supp. 1986), and charged further that McGee was an habitual offender. Miss. Code Ann. § 99-19-83 (Supp. 1989). It appears that McGee has four prior felony convictions, to-wit:
(1) On September 2, 1959, McGee was convicted of rape in the Criminal Court of Shelby County, Tennessee, and was sentenced to a term of ninety-nine years imprisonment.
(2) On September 2, 1959, McGee was convicted of assault with intent to commit murder in the Criminal Court of Shelby County, Tennessee, and was sentenced to a term of five years imprisonment. On the two 1959 convictions, Tennessee authorities *1193 held McGee in custody for thirteen years, releasing him on parole in 1972.
(3) On May 2, 1975, McGee was convicted of burglary in the Criminal Court of Shelby County, Tennessee, and was sentenced to a term of three years imprisonment.
(4) On May 2, 1975, McGee was convicted of robbery with a deadly weapon in Criminal Court of Shelby County, Tennessee, and was sentenced to a term of fifteen years imprisonment.
Prior to trial, McGee approached the Circuit Court and moved that the prosecution be precluded from offering the two 1959 convictions against him, citing "Rule 6.09 and 6.09(b)" of the Mississippi Rules of Evidence. The prosecuting attorney then called the court's attention to the two 1975 convictions. The parties established that on his 1959 convictions, McGee was imprisoned from that year until 1972, that he was released from custody in 1972, only to suffer the two further convictions in 1975, upon which he was imprisoned until 1982. In the end, the Court held
In view of the fact that the defendant was incarcerated in 1959 and was out rather a short time before he was again convicted in 1975, and was incarcerated until 1982, I am going to and do hereby rule that the short time he was out between 1972 and 1975, and the short time he has been out after serving a 1975 conviction, warrants making an exception to the rule, and I will allow questions to be asked about those convictions, if the defendant takes the stand.
At trial James McGee took the witness stand to testify in his own defense, but before he could utter a sound, the Court reminded him that he could be examined regarding his prior convictions. In the course of this warning, the Court recited that
... counsel for the defendant stated a prior objection to any questions as to the defendant about his convictions in 1959 and in 1975, ... and it appears to the Court that that information should be given to the jury, on the matter of his truthfulness, to give the jury the proper picture of the defendant's record and in order to properly assess any effect such a record might have on their attitude concerning his veracity.
On direct examination by his own attorney, McGee immediately told the jury of his four prior convictions and his record of imprisonment.
In due course, the jury found McGee guilty as charged of both the armed robbery and the aggravated assault of Michael Glaser. The Court further found that McGee was an habitual offender and ordered him imprisoned for the remainder of his life without eligibility for probation or parole. Miss. Code Ann. § 99-19-83 (Supp. 1987).
McGee now appeals his conviction and sentence and presents a number of issues for review, only two of which require discussion.

III.
McGee argues that the Circuit Court erred when it denied his post-trial motion for judgment of acquittal notwithstanding the verdict. This motion, of course, was nothing more than a formal renewal of his motion for a directed verdict of acquittal, a/k/a request for a peremptory instruction, made at the conclusion of all the evidence. Wetz v. State, 503 So.2d 803, 807-808 fn. 3 (Miss. 1987).
Without reviewing the evidence in detail, Glaser, Reynolds and Busby (via video tape deposition due to his service on the high seas at the time of the trial) told a perfectly plausible story that McGee robbed Glaser at gunpoint and shot and wounded him several times. To be sure, McGee replied with a narrative description of the events of the evening of November 26, 1986, which, if believed, would have entitled him to acquittal. By the same token, we do not see how it may seriously be argued that the testimony of Glaser, Reynolds and Busby was not sufficient that, if believed, a jury might convict, nor that on appeal we must affirm. Indeed, counsel for McGee virtually conceded the point at oral argument.
*1194 Our standard of appellate review of points such as this is as limited as it is familiar. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. The evidence and inferences so considered, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond-a-reasonable-doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, we may not disturb the verdict of guilty. See, e.g., Benson v. State, 551 So.2d 188, 192-93 (Miss. 1989); Jackson v. State, 551 So.2d 132, 136-37 (Miss. 1989); Gray v. State, 549 So.2d 1316, 1318-19 (Miss. 1989).
When considering the elements of the offenses of armed robbery and aggravated assault, as given the jury in the Circuit Court's instructions,[1] applying those to the evidence, slanted as required by our limited scope of review, we may only conclude that reasonable jurors could well have found McGee guilty of both aggravated charges. All things considered, the evidence was not such that the Circuit Court had authority to set aside the verdicts, and if this be so, our authority is similarly circumscribed. In sum, we find no error here.

IV.

A.
McGee further charges that the Circuit Court erred when it denied his pre-trial motion in limine to preclude the prosecution's proving four prior criminal convictions before the jury. We have described the course of proceedings below in Part II above.
McGee is met initially with a prosecution claim of waiver. Pointing to the fact that on direct examination and in response to questions by his own attorney, McGee presented the convictions to the jury himself, the prosecution says he "may not complain of error, if error, which he caused." We are told further that nothing in the Circuit Court's prior ruling required that the prosecution offer evidence of the prior convictions and that "the state [may possibly have] eschewed a line of questioning about them."
The point is disingenuous. At both the pre-trial motion in limine and the colloquy in open court immediately before McGee took the stand, the prosecution left no doubt that, if permitted, it planned to use the prior convictions for impeachment. Moreover, the court's pre-trial and trial rulings displayed no hint of doubt regarding admissibility of any of the four prior convictions.
In a variety of contexts we have held that, once the trial court has ruled upon a matter, the parties may try the remainder of the case on the assumption that the ruling will stand, Merritt v. State, 517 So.2d 517, 519 (Miss. 1987); Stringer v. State, 500 So.2d 928, 946 (Miss. 1986),
... and, when that litigant reaches this Court we will not imply a waiver from the subsequent conduct which does nothing more than show the lawyer's obligatory respect for the trial judge while at the same time continuing as best may be done the advancement of his client's cause.
Lenard v. State, 552 So.2d 93, 97 (Miss. 1989); Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 711 (Miss. 1984); Munford, Mississippi Supreme Court Practice § 3.2 (1989).
Faced with the virtual certainty that the prosecution would offer the prior convictions, coupled with an unequivocal trial court decision that the convictions were admissible, defense counsel employed what we all know to be conventional trial strategy. Faced with damaging evidence, counsel sensibly chose to be up front with the jury and have the defendant bare his breast to the end the jury would consider him candid on other issues as well. In such circumstances we are not about to *1195 imply a waiver from McGee's personal proffer of his prior convictions.

B.
Substantively, we consider first McGee's 1975 convictions of burglary and robbery with a deadly weapon. We encounter Rule 609(a), Miss.R.Ev., which read as follows:
(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.
The mandate of our cases is that the prosecution has a threshold burden of showing prima facie the prior conviction's probative value. Signer v. State, 536 So.2d 10, 13 (Miss. 1988); McInnis v. State, 527 So.2d 84, 88 (Miss. 1988); Johnson v. State, 525 So.2d 809, 812 (Miss. 1988). The prosecution must demonstrate how the conduct, of which the prior conviction is but convincing evidence, "may suggest the witness less than credible." McInnis, 527 So.2d at 88. We say this to say once again that Rule 609 declares prior convictions admissible (if at all) solely on the witness' propensity for truthfulness, and not to show
A propensity on the part of the defendant to have acted on the present occasion in conformity with the criminal character suggested by the previous conviction.
McInnis, 527 So.2d at 88, quoting United States v. Preston, 608 F.2d 626, 639 (5th Cir.1979).
If this threshold be cleared, our cases require that a trial judge, confronted with a Rule 609(a) ruling, perform an on-the-record weighing of the probative value of the conviction against its prejudicial effect. Peterson v. State, 518 So.2d 632, 636-37 (Miss. 1987). En route to ruling on the admissibility of prior convictions, the trial judge must articulate his reason[ing], considering at least five factors:
(1) The impeachment value of the prior crimes;
(2) The point in time of conviction and the witness' subsequent history;
(3) The similarity between the past crime and the charged crime;
(4) The importance of the defendant's testimony; and
(5) The centrality of the credibility issue.
Johnson, 525 So.2d at 812; Peterson, 518 So.2d at 636-637. We have reiterated the Peterson and progeny mandate of an on-the-record pre-admissibility examination and balancing of the five factors in McInnis, 527 So.2d 84, 87; and in Signer, 536 So.2d at 13; see also, Ivy v. State, 522 So.2d 740, 744 (Miss. 1988); but see Johnson v. State, 529 So.2d 577, 585-88 (Miss. 1988).
One of the reasons we require this articulated balancing process is so that on appeal
this Court can more easily ascertain whether or not the trial judge has abused his discretion in granting or denying admissibility of prior convictions for impeachment purposes,
Johnson, 525 So.2d at 812, for
[when] we review on appeal the decision of a trial court within the discretion vested in it, we ask first if the court below applied the correct legal standard.
Burkett v. Burkett, 537 So.2d 443, 446 (Miss. 1989); see also, Detroit Marine Engineering v. McRee, 510 So.2d 462, 467 (Miss. 1987).
Today's trial judge performed no Peterson-mandated on-the-record balancing act, a fact all concede. The prosecution concedes the Peterson rule, as it must, but argues we should not enforce it here, because this case was tried in mid-October, 1987, and Peterson was not decided until December 16, 1987. The quick answer is that McGee was tried before Peterson. The date of trial in Peterson was March 3, *1196 1987, yet the rule was enforced in that case. The trials that generated Johnson v. State, 525 So.2d 809, 813 (Miss. 1988); and McInnis v. State, 527 So.2d 84 (1988) also took place prior to Peterson. We find Signer employing plain error to enforce the Peterson rule to a trial on April 11, 1986, a full year and a half before this Court decided Peterson. Signer, 536 So.2d at 12-13.
Candor requires concession that Peterson says, "In the future in such situations the trial judge must specifically weigh on-the-record, those factors which make the conviction probative against those factors which make the evidence of the conviction prejudicial." Peterson 518 So.2d at 638. [emphasis supplied] We repeated the "in the future" phraseology in McInnis, 527 So.2d at 87. On the other hand, Peterson was reversed for failure to employ the standard, as were Johnson and Signer, removing any doubt of the retroactive application of the rule.
There is little reason why Peterson should have surprised anyone. The Mississippi Rules of Evidence have been effective since January 1, 1986. All parties had had more than 21 months to become familiar with those rules prior to the trial of James McGee. It was common knowledge among the bench and bar that the Mississippi Rules of Evidence in general and Rule 609 in particular were taken almost verbatim from the Federal Rules of Evidence which had been in effect since 1975. This Court had made clear that it would consider persuasive established Federal interpretations of Federal Rules of Evidence identically worded to Mississippi Rules. See Foster v. State, 508 So.2d 1111 n. 3 (Miss. 1987).
The five-part balancing test now ascribed to Peterson has been a part of federal evidentiary jurisprudence at least since 1967 when it was set forth by Judge (later Chief Justice) Warren E. Burger in Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir.1967). United States v. Mahone, 537 F.2d 922, 929 (7th Cir.1976) engrafted these factors onto Rule 609. As long ago as 1979, the United States Court of Appeals for the Fifth Circuit was mandating on-the-record findings in Rule 609 cases. See United States v. Preston, 608 F.2d 626, 639-40 (5th Cir.1979) and note, 59 Miss.L.J. 627, 634-35 (1989) and cases cited therein. All of this history is recited in Peterson, 518 So.2d at 635-636, and again in Johnson, 525 So.2d at 811-812. Because this approach to Federal Rule 609 was so well settled and because it was well known that in construing our similarly worded rules we would look to authoritative federal construction, no unfairness attends in forcing the on-the-record balancing test requirement to this test. Indeed, at the time this case was tried the legal interpretations most prominently available were those in the federal courts noted above. See also 3 J. Weinstein, Evidence ¶ 609[04] at page XXX-XX-XX (1987).

C.
We come now to McGee's 1959 convictions of rape and assault with intent to murder. Because McGee was discharged from custody in 1972, these convictions are governed by Rule 609(b), which reads as follows:
(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect... .
Here again, the trial court did not make the Peterson mandated on-the-record findings. The prosecution struggles mightily to avoid Peterson and progeny by arguing that those cases concern Rule 609(a) and that somehow that rule imports a different standard than Rule 609(b). We certainly agree that the two sub-paragraphs of the Rule are different, but the difference cuts counter to the prosecution's point. The language reveals Rule 609(b) weighted more heavily against admissibility than Rule 609(a). Rule 609(b) presumes more than ten year old convictions by definition *1197 of less probable probative value and more potential for unfair prejudice. The Rule provides such convictions prima facie not admissible and then provides for the rebuttal according to the balancing of probative value against prejudicial effect. The balance mandated by Rule 609(a) is that "the probative value of admitting this evidence outweighs its prejudicial effect." The comparable provision of Rule 609(b) employs the same ultimate facts: probative value and prejudicial effect, but shifts the balance as it requires that the Court determine "that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect." The principal difference is Rule 609(b)'s requirement that probative value "substantially" outweigh prejudicial effect. In any event, if on-the-record, articulated performance of the five-factor balancing test be mandated under Rule 609(a), it follows a fortiori that the same process must be employed when determining whether probative value substantially outweighs prejudicial effect.
Peterson follows the Fifth Circuit's precedent in Preston in holding that "the trial judge's failure to make on-the-record determinations under Rule 609(a)(1) ... robs a defendant of the rule's protection," 518 So.2d at 636. If this be so in the case of Rule 609(a), it certainly follows that it is so in the case of Rule 609(b) where there is an even greater danger of unfair effect from the use of stale convictions.
We recognize that a number of our cases have gone forward and performed the balancing test here. See Peterson, 518 So.2d at 637; Johnson, 525 So.2d at 812. On other occasions, we have remanded for a new trial, directing that the trial court perform the balancing test and make on-the-record findings. See Signer v. State, 536 So.2d at 12-13. We choose the latter course today except to note two points. The nature of the trial below and the shape the proof has taken makes McGee's credibility a central issue in the case. There are but four eyewitnesses to the events of the evening of November 26: Reynolds, Glaser, Busby and McGee. If McGee's version is going to be placed before the jury, he must do it himself. Compare Peterson, 518 So.2d at 637; Johnson, 525 So.2d at 812. The jury's verdict perforce will turn on the jurors' perception of McGee's truthfulness. Second, with regard to the 1959 rape conviction, the Court on remand needs to be sure the prosecution satisfies McInnis' mandate by showing probative value ab initio. Johnson v. State, 525 So.2d at 812; cf. Peterson v. State, 518 So.2d at 637.
Under these circumstances we reverse the judgment of the Circuit Court in each of these cases and remand these cases to that Court for a new trial on all issues. See West v. State, 553 So.2d 8 (Miss. 1989); Hall v. State, 539 So.2d 1338, 1348 fn. 24 (Miss. 1989); Johnson v. State, 529 So.2d 577, 579 (Miss. 1988).
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in part and dissents in part.
PITTMAN, J., dissents without written opinion.
NOTES
[1] See McMillan v. King, 557 So.2d 519, 522 (Miss. 1990); Pennock v. State, 550 So.2d 410, 413, fn. 4 (Miss. 1989); Fisher v. State, 481 So.2d 203, 213 (Miss. 1985).