# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00350-SCT

*BRYAN ABLE SKINNER*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/29/90 |
| TRIAL JUDGE: | HON. JERRY O. TERRY |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HUBERT EDWARD ELLIS, SR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | WILLIAM MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 12/18/97 |
| MOTION FOR REHEARING FILED: 1/7/1998 | |
| MANDATE ISSUED: | 4/8/98 |

**BEFORE DAN LEE, C.J., PITTMAN AND MILLS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

Bryan Able Skinner ("Skinner"), along with Norman Montz ("Montz") and Robert Andrew Johnson ("Johnson"), was indicted by the Grand Jury of Harrison County on April 13, 1990, for the crime of armed robbery. Skinner, Montz and Johnson were tried in the Harrison County Circuit Court. At the close of the State's case, all defendants moved for directed verdicts and all were denied. The jury returned three verdicts of guilty and Skinner was sentenced to a term of twenty-five years. Skinner filed a Motion for a New Trial on November 30, 1990, asserting that the jury verdict was against the overwhelming weight of the evidence. The trial court overruled the motion on February 1, 1991. The court granted Skinner an out-of-time appeal on February 8, 1996. This Court has previously affirmed the convictions of Skinner's co-defendants, Montz and Johnson. *Johnson v. State,* 630 So. 2d 51 (Miss. 1993).

Skinner appeals to this Court asserting that the trial court erred in denying his Motions for Directed Verdict, Judgment Not Withstanding the Verdict, and New Trial. He contends that the jury verdict was against the overwhelming weight of the evidence and that the proof was wholly insufficient to support his conviction.

## STATEMENT OF THE FACTS

On November 27, 1989, Edna McQueen ("McQueen") was working at a Circle K convenience store in Biloxi, Mississippi. At approximately 2:45 a.m., she heard the automatic bell on the entrance door sound, and saw a man walk into the store and down the first aisle. The man then walked up the second aisle toward the front of the store. McQueen testified that the man was wearing a stocking over his face, a maroon jacket and pointing a silver gun at her. He then jumped the counter, grabbed McQueen by the hair, hit her with the gun and forced her to the floor where he told her to remain.

A second man then walked across McQueen's legs and began to try to open the cash register. McQueen identified him as wearing blue jeans and white sneakers. The man holding McQueen down asked her how to open the register. She told him how to do it, and then heard the cash register open. The man took cash and food stamps from the drawer.

The man dragged McQueen into the storage room and hit her again. He told her that if she moved or left the room that he would kill her. After the men had left, McQueen peeked out of the storage room and saw one of her regular customers, Joseph Juanico ("Juanico"), coming into the store. She crawled from the storage room and attempted to dial 911, but was unable to do it herself. Juanico completed the call.

Juanico testified that he went to the Circle K around 3:00 a.m. to purchase a *TV Guide*. As he approached the store, he saw three men running in his direction out of the Circle K. He described the men as wearing dark clothing and stockings over their faces. He said that one of the men was pulling his stocking off. He recalled that at least one of the men was wearing a jacket. He also saw the man with the jacket gesture as if he was putting something into his pants. He testified that he could not tell if the men were white or black, but that they ran like white people. He did not see or hear a vehicle.

Officer Rick Dawson of the Biloxi Police Department arrived on the scene of the armed robbery at 3:06 a.m. When he arrived, there was a white male standing outside of the store and McQueen was lying behind the register. Dawson interviewed McQueen and the male, Juanico. McQueen told Dawson that a white male had entered the store, walked back to the cooler, put on a stocking mask and walked up to the cash register. The male pointed a gun at her and told her to lie on the floor. Another male, whom she did not see enter the store, came in. They took whatever was in the register. One of the men struck McQueen in the head and dragged her into the storage room and told her to stay there or he would shoot her. The physical description given by McQueen was of a male with dark clothes.

Juanico told Dawson that he had seen three white males running north from the store. Upon receiving the information from McQueen and Juanico, Dawson called the police dispatcher and had her give the information to all units. Dawson then dusted for fingerprints, but did not find any. Dawson collected no other physical evidence at the scene.

Shirley Baker, a Circle K Corporation manager, determined through an inventory that cash and food stamps had been taken in the robbery. She determined that a total of $32.15 was missing, including food stamps.

George Ferald was a witness for the State. He was working for the Yellow Cab Company in Biloxi on the night of the robbery. That night, he was parked at a Yellow Cab stand at the Krispy Kreme Doughnut Shop on Highway 90. He heard over his dispatch, that a robbery had taken place. Shortly thereafter, three white males pulled into the parking lot. Ferald said they were in a brown car with a loud exhaust. The car looked like a Monte Carlo. The men sat in the car for two to five minutes and then drove off in the direction of Gulfport. The man sitting on the passenger side had on a dark shirt.

Officer Richard Hilliard had heard the dispatch concerning the robbery. While on duty, he stopped at the Krispy Kreme Doughnut Shop and asked Ferald if he had possibly seen three white males dressed in dark clothing acting suspiciously. Ferald told Hilliard that he had just seen three white males in dark clothing, and that they had just left in a brownish car with a loud muffler. He described the car as possibly being a Monte Carlo. Hilliard called his dispatch and had her radio Gulfport that Ferald had seen the suspects heading west to Gulfport.

At approximately 3:30 a.m., Officer Sue Parker of the Gulfport Police Department, received a dispatch that a robbery had occurred in Biloxi involving three white males in dark clothing driving a brown Monte Carlo. Just before 4:00 a.m., Parker spotted a brown vehicle that appeared to be a Monte Carlo, traveling west on Highway 90. There were three white males in the car. Parker noticed that the vehicle had a loud exhaust system. She advised her dispatch that she was following the car. She reported the tag number. She asked dispatch to call Biloxi to determine if the suspect vehicle was supposed to have a loud exhaust. Dispatch verified that information. Parker then called for additional backup units before attempting to stop the vehicle.

Parker followed the vehicle until it turned into a Majik Market store in Gulfport. Using her public address system, Parker asked the driver and the front seat passenger to put their hands on the dash of the vehicle. Parker noticed that the driver and the passenger were fidgety, and that they were moving their hands toward the back seat and the floorboard. She again ordered them to put their hands on the dash. The male in the back seat was leaning down, and Parker ordered him to raise his hands in the air, which he did not do. Parker then got out of her police car with her shotgun and ordered the suspects to keep their hands on the dashboard, and not to make any suspicious-looking moves.

At this time, the backup units arrived. The individuals were taken out of the vehicle and searched. Parker searched the driver, Johnson. She asked him if he had any weapons on him, and he replied that he did not. Parker found a loaded .22 revolver in the waistband of his pants. She also recovered a nylon stocking and a syringe from the inside left pocket of Johnson's jacket. Parker recovered a $10 bill from Johnson's right front pants pocket. She also recovered from Johnson a pack of cigarettes, a knife, a set of handcuffs and some keys.

Officer Philip Culotta of the Gulfport Police Department was one of the officers that responded to the backup call by Officer Parker. Culotta conducted the search of Skinner. Skinner was sitting in the front passenger seat in the vehicle. Culotta found a .410 shotgun shell in Skinner's left front pocket, six $1 bills, and a silver cigarette lighter in his right front pocket. The only defendant Culotta remembered wearing a jacket was Johnson. He remembered that it was a dark color.

Officer Claude Guinn also responded to the backup call. He searched the vehicle, which turned out to be a maroon Pontiac. Upon his search of the vehicle, Guinn recovered a $5 bill from the console, and a nylon stocking and a loaded .410 shotgun from underneath the front passenger seat. He also found a knife in the back seat.

Officer Henry Curtis of the Gulfport Police Department arrested the three individuals and transported them to the Biloxi Police Department. Officer Curtis received the items recovered by the Gulfport Police Department. He submitted the revolver and the nylon stockings to the Mississippi Crime Lab. Hair samples were collected from each of the three defendants. Sheila Browning, from the Crime Lab, stated that a head hair recovered from the stocking found in Johnson's pocket showed similar characteristics of the known head hair of Johnson.

Curtis also recovered a maroon jacket from Montz, which he was wearing when he was arrested. He observed that Johnson was wearing a blue jean jacket when arrested, and Skinner had on a dark T-shirt. McQueen identified the maroon jacket as being worn by one of her assailants. McQueen was also shown the gun recovered from Johnson, and she became upset when she saw it. She told Curtis that if he searched that gun closely enough, he would find her hairs implanted in the barrel. He did not find her hairs. McQueen identified the gun at trial as the one that was held on her.

All three defendants rested without presenting any evidence. The jury returned verdicts of guilty against all three. The jury was unable to agree on the sentences to be imposed. The trial court, therefore, imposed sentence. Skinner was sentenced to twenty-five years.

## DISCUSSION OF LAW

**I. THE COURT ERRED IN FAILING TO GRANT SKINNER'S MOTION FOR DIRECTED VERDICT OR HIS MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE FOR A NEW TRIAL, BECAUSE THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS WHOLLY INSUFFICIENT TO SUPPORT THE CONVICTION.**

This assignment of error challenges the weight and sufficiency of the State's evidence against Skinner. This Court found that the verdict of guilty was not against the overwhelming weight of the evidence when it examined the same facts in the direct appeals of Skinner's co-defendants, Johnson and Montz, in *Johnson v. State,* 630 So. 2d 51, 53 (Miss. 1994).

This was a circumstantial evidence case, and therefore the State was required to "prove the accused's guilt not only beyond a reasonable doubt, but to the exclusion of every other hypothesis consistent with innocence." *Isaac v. State,* 645 So.2d 903, 909 n.7 (Miss. 1994)(*quoting Leflore v. State,* 535 So.2d 68, 70 (Miss. 1988)).

## A. Directed Verdict and JNOV

When considering a motion for directed verdict, or judgment notwithstanding the verdict, this Court must consider all of the evidence in the light most favorable to the State, accepting all evidence

introduced by the State as true, together with all reasonable inferences therefrom. If there is "substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, we may not disturb the verdict." *McGee v. State,* 569 So. 2d 1191, 1194 (Miss. 1990); *Barnwell v. State,* 567 So. 2d 215, 217 (Miss. 1990); *Davis v. State,* 530 So. 2d 694, 703 (Miss. 1988). This Court will reverse only where "reasonable and fair-minded jurors could only find the accused not guilty." *McClain v. State,* 625 So. 2d 774, 778 (Miss. 1993)(*citing Wetz v. State,* 503 So. 2d 803, 808 (Miss. 1987)).

The only evidence collected from Skinner was a .410 shotgun shell, six $1 bills and a cigarette lighter. The weapon used in the robbery was not a .410 shotgun, and there was no evidence that the $1 bills were stolen in the robbery. McQueen testified that only two men robbed the Circle K, while Juanico testified that he witnessed three men running from the store. Juanico did not see or hear a vehicle leaving the store. Considering the evidence in the light most favorable to the State, together with the reasonable inferences to be drawn therefrom, we find that there was not substantial evidence in this case such that reasonable jurors might have reached different conclusions as to guilt. Reasonable and fair-minded jurors could only have found Skinner not guilty. This is especially so in light of the fact that this was a circumstantial evidence case, and the jury was required to find Skinner guilty not only beyond a reasonable doubt, but also to the exclusion of every other hypothesis consistent with innocence. *Isaac, supra.* Therefore, this Court finds that the trial court erred in denying Skinner's motion for directed verdict or judgment notwithstanding the verdict, and its decision is reversed.

## B. New Trial

A motion for new trial is discretionary with the trial judge and this Court will not order a new trial unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *McNeal v. State,* 617 So. 2d 999, 1009 (Miss. 1993); *Burrell v. State,* 613 So. 2d 1186, 1191 (Miss. 1993); *Pierre v. State,* 607 So. 2d 43, 54 (Miss. 1992). In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. *Nicolaou v. State,* 612 So. 2d 1080, 1083 (Miss. 1992). Any factual disputes are properly resolved by the jury and do not mandate a new trial. *McNeal,* 617 So. 2d at 1009.

Accepting as true all of the evidence which supports the jury verdict in this case, we find that the trial court abused its discretion in failing to grant Skinner a new trial. The verdict in this case is contrary to the overwhelming weight of the evidence. To allow the verdict to stand would sanction an unconscionable injustice. Therefore, the decision of the trial court is reversed.

## CONCLUSION

Upon a thorough examination of the evidence presented against Skinner, we find that the jury verdict of guilty was against the overwhelming weight of the evidence. Therefore, the trial court should have granted Skinner's motion for directed verdict. Failing that, it should have granted JNOV or a new trial. This case is reversed and rendered and the defendant is discharged.

**REVERSED AND RENDERED.**

**SULLIVAN, P.J., BANKS, McRAE AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, DISSENTING:**

Because the evidence in this case supports the jury's verdict, I respectfully dissent. As the majority opinion indicates, Skinner and two other men were tried together for armed robbery of a Biloxi Circle K Store. The jury found all three men guilty. In 1993, this Court held that the evidence presented at trial was of sufficient weight to uphold the convictions of Skinner's two co-defendants. *See Johnson v. State*, 630 So. 2d 51 (Miss. 1993). Because all three defendants were tried together, there can be no logical argument that the exact same evidence, presented to the exact same jury, could be of less weight now than it was in 1993. Therefore, I would follow the decision in *Johnson*, 630 So. 2d at 51-52, and affirm the jury verdict. For this reason, I must dissent.

**ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**