829 So.2d 1253 (2002)
Gregory Anthony MALONE a/k/a Ant, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00270-COA.
Court of Appeals of Mississippi.
September 10, 2002.
Rehearing Denied November 5, 2002.
*1254 Dan W. Duggan, Jr., Brandon, attorney for appellant.
Office of the Attorney General, by Charles W. Maris Jr., attorney for appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
LEE, J., for the court.

PROCEDURAL HISTORY
¶ 1. A Hinds County grand jury indicted Gregory Anthony Malone on a charge of capital murder. In February 2001, a jury convicted him on this charge, and he was sentenced to serve life in prison. Malone's subsequent motion for new trial or in the alternative judgment notwithstanding the verdict was denied, and he appeals to this Court raising the following issues: (1) the trial court erred in failing to grant his motion for directed verdict; (2) his right to speedy trial was violated; (3) the trial court erred in failing to suppress his confession; and (4) the trial court erred in allowing evidence to be admitted concerning appellant's criminal history. We review these issues and find no merit; thus, we affirm.

*1255 FACTS
¶ 2. On or about July 2, 1998, appellant Malone, along with Demarcus Kelly and Antonia Harrison, embarked on a plan to rob Dannie Ward. They lured Ward to a house where two other females were present. Once all parties were inside the house, the plan went awry. Malone and Kelly, who were disguised and brandishing handguns, demanded that the others turn over their money. The others accommodated including Harrison who was in on the plan and played along, but Ward chose to fight. Once Malone saw that the plan was not going to work, he attempted to leave. At that point, he saw Kelly hit Ward in the face with his gun, then Ward came at Kelly with a two-by-four board. In return, Kelly shot Ward, a wound which eventually led to Ward's death.

DISCUSSION OF THE ISSUES

I. DID THE TRIAL COURT ERR IN FAILING TO DIRECT A VERDICT IN FAVOR OF THE APPELLANT?
¶ 3. With his first issue, Malone argues that the trial court erred in failing to grant his motion for directed verdict at the close of the State's case-in-chief. Specifically, he argues that since the underlying crime of armed robbery was never proven, he could not have been found guilty of capital murder. Malone claims that the only person actually "robbed" was Harrison, but she was an accomplice and was not in actuality robbed, only pretending to be fearful and turn over her money to her cohorts. To the contrary, Malone claims that the underlying crime was aggravated assault, which is not among those crimes for which a person can be convicted of capital murder, as described in Miss. Code Ann. § 97-3-19(2) (Rev.2000). As relating to the present case, capital murder is defined as follows:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases: ... (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies ....
Miss.Code Ann. § 97-3-19 (Rev.2000). The underlying felony in the present case was armed robbery, which is defined as follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery ....
Miss.Code Ann. § 97-3-79 (Rev.2000) (emphasis added). The supreme court has found that property need not have been taken in order for an attempted robbery to serve as the underlying felony for capital murder. See Spann v. State, 771 So.2d 883 (¶ 20) (Miss.2000); Harris v. State, 445 So.2d 1369, 1370 (Miss.1984).
¶ 4. Although Ward never turned over any money or property to his robbers, the jurors were left to weigh all the evidence to determine whether the actions of Malone and Kelly were sufficient to meet the definition of armed robbery, as described in the above statute.
Our standard for reviewing a challenge to the sufficiency of the evidence requires us to view the credible evidence consistent with the verdict as true. On appeal all reasonable inferences are given to the prosecution once the jury has reached the guilty verdict. We may reverse only if the evidence considered in *1256 the light most favorable to the verdict simply would not convince reasonable and fair-minded jurors of guilt.
Starks v. State, 798 So.2d 562 (¶ 17) (Miss. Ct.App.2001). Considering the evidence in a light favorable to the verdict, we find the evidence sufficient to support the jury's finding; consequently, Malone's argument that sufficient evidence was not provided to support a charge of armed robbery is without merit.

II. WAS MALONE'S RIGHT TO A SPEEDY TRIAL VIOLATED?
¶ 5. Malone's motion to dismiss for violation of his constitutional right to a speedy trial was denied, and he now cites to the factors from Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in support of his argument that the denial was erroneous.
The United States Supreme Court in Barker v. Wingo, employed a four pronged balancing test in determining whether a defendant had been deprived of his right to a fair trial. The four prongs are: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.
Arthur v. State, 735 So.2d 213 (¶ 11) (Miss. 1999). We look to these factors as they apply to Malone's case.

a. length of delay
¶ 6. Regarding the length of delay, Malone was arrested on August 5, 1998, and his trial began on February 5, 2001. The total time elapsed is approximately 915 days or 30 months. A delay of eights months is presumptively prejudicial, so we look to the next factor. Arthur, 735 So.2d at (¶ 13).

b. reason for delay
¶ 7. The reason for the delay appears to have been docket congestion, which Malone's attorney conceded in his argument on the motion. He noted that each time the docket was called, he always announced he was ready for trial, with one exception when he had planned a vacation. In rebuttal, the State acknowledged that the crowded docket was the cause for the delay, pointing out several older more serious cases that needed to be and were tried before Malone's case could make it before the judge. "Where the reason for the delay is overcrowded dockets and understaffed prosecutors, this Court has stated that this factor will not be weighed heavily against the State." McGhee v. State, 657 So.2d 799, 802 (Miss.1995). "This Court has held that congested trial court dockets may constitute `good cause' for a trial's delay." McGhee, 657 So.2d at 803. This factor weighs lightly against the State, but is essentially neutral. See McGhee, 657 So.2d at 803.

c. assertion of right
¶ 8. The third factor concerns Malone's assertion of his right to a speedy trial. At the motion hearing, Malone's attorney told the judge that at every trial setting he announced he was ready for trial. However, we find this is not the same thing as Malone's asserting his right to a speedy trial. We also note that although Malone filed a motion to dismiss for violation of his right to a speedy trial, such demand is not the equivalent of a demand for a speedy trial because it seeks discharge and not trial. Bingham v. State, 755 So.2d 426 (¶ 19) (Miss.Ct.App.1999). Since Malone failed to assert his right to a speedy trial, we find this factor weighs in favor of the State.

d. prejudice suffered due to delay
¶ 9. Finally, the fourth factor concerns prejudice resulting from the delay.
This Court has recognized that a defendant may be prejudiced in two different *1257 ways by a substantial delay. First, a delay may impair the accused's defense because of the potential loss of evidence, the unavailability of witnesses, or the erosion of a witness's memory. The second reason a defendant may suffer prejudice would be because of the restraint on his liberty by his incarceration. In support of such prejudice, the defendant may offer evidence of oppressive pretrial incarceration, anxiety and concern, and impairment of his defenses. Although a defendant is not required to "make an affirmative showing of prejudice to show that his right to a speedy trial was violated," without a showing of any prejudice, this final factor cannot weigh in his favor. Moreover, incarceration alone is not sufficient prejudice to warrant reversal.
Birkley v. State, 750 So.2d 1245 (¶ 27) (Miss.1999) (citations omitted). Malone claims that he was subjected to oppressive pre-trial incarceration which prevented him from being eligible to participate in a work release program, his ability to fashion a defense was impaired because he and his attorney "were not always together," and he suffered anxiety due to the delay. Malone does not argue that any evidence was lost or witness was unavailable or any erosion occurred to a witness's memory. Concerning a restraint on his liberty by his incarceration, Malone fails to show oppressive pretrial incarceration. In fact, he was incarcerated on a separate charge during much of the same time due to a probation violation in December 1998. He also fails to provide specific evidence concerning anxiety he suffered or any specific injury to his ability to prepare a defense. Malone fails to assert any real prejudice he suffered in fashioning his defense, which is the ultimate indication of prejudice. Birkley, 750 So.2d at (¶ 27). Thus, this factor weighs in favor of the State.
¶ 10. Once the factors have been reviewed, we must perform a balancing test concerning the factors as they weigh in favor of the appellant and the State.
No mathematical formula exists according to which the Barker weighing and balancing process must be performed. The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of nonpersuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.
State v. Magnusen, 646 So.2d 1275, 1278 (Miss.1994). While not considering lightly the fact that the length of delay was extensive, we recognize that Malone failed to assert his right to a speedy trial, declined to object to any delays, other than filing the day before trial a motion to dismiss for failure to provide a speedy trial, and has importantly failed to show he suffered any actual prejudice due to the delay. Thus, we cannot find Malone's right to a speedy trial was violated.
¶ 11. In a conclusory sentence to his argument on this issue, Malone mentions that his case should have been dismissed additionally due to violation of his statutory right to a speedy trial. See Miss.Code Ann. § 99-17-1 (Rev.2000). However, he failed to raise this issue within 270 days of his arraignment and, thus, effectively acquiesced to the delay. See Walton v. State, 678 So.2d 645, 649-50 (Miss.1996). Malone's argument concerning a statutory violation is without merit.

III. DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS MALONE'S CONFESSION?
¶ 12. Malone argues the trial court committed reversible error in overruling his motion to suppress his confession. Specifically, Malone refers to events surrounding his giving his statement of confession. "We review the admissibility of a *1258 confession by the trial court under our well established abuse of discretion standard." Kelly v. State, 735 So.2d 1071 (¶ 20) (Miss. Ct.App.1999).
¶ 13. Malone recalls that as he walked to the interrogation room along with Detective Tommy Nelson and Detective Ronald Youngblood, Detective Youngblood told Malone that as long as he told the truth, "they would be lenient on him," referring to the district attorneys. Malone claims this was the sole reason he made his statement.
¶ 14. At the pre-trial suppression hearing, Malone testified, as did Detectives Nelson and Youngblood. Detective Nelson testified that he was with Detective Youngblood and Malone the entire trip of thirty feet from his desk to the interrogation room, and at no time did he hear Detective Youngblood make any promises to Malone. Detective Nelson affirmed that Malone was read his rights when he was arrested, when he arrived at headquarters, and again on the videotape prior to his recorded statement. Detective Nelson testified that prior to the videotaped confession, Malone had already verbally given his statement of involvement, and that the videotape was used to record Malone's repetition of the verbal statement he previously had given. On the videotape, Malone affirmed that he had not been promised anything in exchange for his statement, and later when Malone testified, he admitted he had lied on the videotape when he said he had not been promised anything. Detective Youngblood testified that he could not recall even the trip to the room, but he was certain that if he had indeed made any remarks, they most certainly would not have been promises of leniency because he was trained to know that those decisions were outside his scope of duty. Malone makes much of the fact that subsequent to the incident at issue, Detective Youngblood was arrested and fired after he admitted to bribery and a federal investigation resulted.
¶ 15. On appeal, Malone wants us to believe that both detectives lied in their testimony, but that his testimony was truthful.
The proper procedure for proving the voluntariness of a confession has been clearly established in Agee v. State, 185 So.2d 671 (Miss.1966). The State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. When objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession. This hearing is conducted in the absence of the jury.... [W]hen, after the State has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness. The Agee rule remains a sound principle of law in this State.
Kelly v. State, 735 So.2d 1071 (¶ 13) (Miss. Ct.App.1999). Malone was afforded a hearing, both officers who were present at the alleged event testified at the hearing that Malone's confession was voluntary and that no promises were made of leniency thereby making out a prima facie case that the confession was voluntary, and the judge in his discretion weighed the testimony *1259 and evidence to arrive at his decision. We find no error here.
¶ 16. Malone also claims that since Detective Youngblood did not testify at the trial, the question of voluntariness became a "swearing match" between himself and Detective Nelson, who admitted that he was not with Detective Youngblood and Malone the entire time the two were with one another. We do not find Malone's argument persuasive.
The competency of a confession as evidence is for the court to decide as a matter of law, while the weight and credibility of a confession is for the jury to decide along with other testimony and physical evidence. Once a suppression hearing has been held in strict accordance with the mandate of Agee, outside the presence of the jury, and the court has ruled, as a matter of law, that the confession was freely and voluntarily given and the confession is admitted into evidence, the [S]tate need not, except in its discretion, recall all the officers to again testify to the voluntariness of the confession after the defendant takes the stand and claims that the confession was obtained by coercion, etc.
McNeal v. State, 405 So.2d 90, 92 (Miss. 1981). At the suppression hearing, the judge was presented all relevant evidence concerning whether or not to admit the confession. Once the judge made his decision, the issue of admissibility was no longer a question. Rather, the jury was to consider the confession, along with the other evidence presented at the trial, to determine Malone's guilt. McNeal v. State, 405 So.2d at 92. We find no abuse of discretion with the judge's decision.

IV. DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE CONCERNING THE APPELLANT'S CRIMINAL HISTORY?
¶ 17. With his final issue, Malone argues the trial court erred in allowing the State to introduce evidence of his prior arrest for house burglary. Malone claims that such evidence was inadmissible as more prejudicial than probative, and the prior offense was so unrelated to the current charge that the impeachment value was minimal. Again, we note the abuse of discretion standard concerning admissibility of evidence. Gleeton v. State, 716 So.2d 1083 (¶ 22) (Miss.1998).
¶ 18. Before addressing the merits, we initially address the State's argument with regard to the waiver issue. The State refers us to the U.S. Supreme Court case of Ohler v. U.S., 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000), and urges us to overrule McGee v. State, 569 So.2d 1191 (Miss.1990), which holds that a defendant may preempt the State by offering evidence of his own prior conviction on direct examination without waiving the issue for appeal.[1] In McGee, the supreme court specifically found that McGee had not waived his right to appeal simply because he employed a trial strategy wherein he was the first to address his prior convictions:
Faced with the virtual certainty that the prosecution would offer the prior convictions, coupled with an unequivocal trial court decision that the convictions were admissible, defense counsel employed what we all know to be conventional trial strategy. Faced with damaging evidence, counsel sensibly chose to be up front with the jury and have the defendant bare his breast to the end the jury would consider him candid on other issues as well. In such circumstances we *1260 are not about to imply a waiver from McGee's personal proffer of his prior convictions.
McGee, 569 So.2d at 1194-95. While the Ohler rule is contrary to Mississippi precedent set forth in McGee and while we recognize federal caselaw as persuasive authority, we note that without a directive from our supreme court to overrule McGee, we are without authority to circumvent this precedent. Accordingly, we address the merits of this issue.
¶ 19. In determining whether to admit evidence of a defendant's prior criminal history, the court conducts a hearing in accordance with Peterson v. State, 518 So.2d 632 (Miss.1987). Peterson adopted the list of factors set forth in Gordon v. U.S., 383 F.2d 936 (D.C.Cir.1967) which requires review of: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. Peterson, 518 So.2d at 636.
¶ 20. The first factor concerns the impeachment value of a prior conviction. The prior crime with which the State sought to impeach Malone was a house burglary conviction. We have found that the crime of burglary is not generally considered to be a crime weighing sufficiently on truth and veracity. Mitchell v. State, 792 So.2d 192 (¶ 96) (Miss.2001); Adams v. State, 772 So.2d 1010 (¶ 57) (Miss.2000). Thus, the impeachment value would be slight, and this factor weighs in favor of Malone.
¶ 21. The second factor concerns relativity in time of the present charge with the prior conviction. The house burglary charge was March 1998, which was four months prior to the incident at issue. This "freshness" of conviction weighs in favor of admissibility.
¶ 22. The third factor concerns the similarity between the crimes. The supreme court addressed this issue in Settles v. State, 584 So.2d 1260, 1264 (Miss.1991), giving insight as to how to conduct such evaluation.
The dangerous convictions are for crimes which are substantially similar to the crime charged and those which, while not similar, have limited application to the issue of credibility but enormous potential for overwhelming the relevant facts of the crime charged. A convicted sex offender, for example, may suffer substantially from that fact in a shoplifting prosecution.
The crimes of burglary and murder are not similar, nor is the prior conviction of burglary more serious than the present crime of capital murder. Thus, we find this favor weighs in favor of admissibility.
¶ 23. The fourth and fifth factors, which deal with the defendant's testimony, tend to offset one anotheras the importance of the witness's testimony tends to rise, so does the centrality of the credibility issue. Id. Concerning the importance of the defendant's testimony, Malone claims that since his defense was abandonment of the scheme, his testimony was crucial since he was the only one who could prove it. As occurred in Adams, this was a case based substantially on witness testimony, not necessarily physical evidence. See Adams, 772 So.2d at (¶ 65). Thus, Malone's testimony was crucial. Concerning the fifth factor of Malone's credibility, again, because this case hinges mainly on testimony, Malone's credibility is a central issue, so these two factors weigh heavily in favor of admissibility.
¶ 24. The judge concluded that the evidence concerning Malone's past conviction was more probative than prejudicial. Reviewing all of the factors, we find that the *1261 judge did not abuse his discretion in admitting the evidence. During the trial, the judge held a hearing in which both sides presented arguments concerning the factors, and although the judge did not make a detailed on-the-record finding concerning the factors, in light of the overwhelming evidence of Malone's guilt, we find this to be harmless error. DeLoach v. State, 722 So.2d 512 (¶ 34) (Miss.1998).
¶ 25. Malone has raised no issue on appeal which merits our reversal. Accordingly, we affirm on all issues.
¶ 26. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] White v. State, 785 So.2d 1059 (Miss.2001), overruled McGee insofar as McGee required that prior convictions used for impeachment purposes must relate to dishonesty or a false statement. White, 785 So.2d at (¶ 6).