# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00903-COA

## CONSOLIDATED WITH

## NO. 2018-KA-01337-COA

**JIMMIE LESHAUN GARDNER A/K/A JIMMIE L. GARDNER A/K/A JIMMIE GARDNER**     APPELLANT

v.

**STATE OF MISSISSIPPI**     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/31/2018 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SANFORD E. KNOTT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 12/10/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Following a jury trial, Jimmie Gardner was convicted of cocaine possession and felony evasion. On appeal, he argues that (1) the trial court erred by admitting evidence of his prior convictions for impeachment purposes, (2) the evidence was insufficient to sustain his conviction for cocaine possession, (3) the trial court erred in giving a flight instruction, and (4) the trial court erred by sentencing him as a habitual offender.

¶2.     We conclude that the trial court committed reversible error by admitting evidence of

Gardner's prior convictions under Mississippi Rule of Evidence 609 and *Peterson v. State*, 518 So. 2d 632 (Miss. 1987). We also conclude that the State presented sufficient evidence to sustain Gardner's conviction for cocaine possession. Therefore, we reverse and remand the case for a new trial on both counts of the indictment without reaching Gardner's remaining issues on appeal.

**FACTS AND PROCEDURAL HISTORY**

¶3.     Around 9 p.m. on September 4, 2016, Officer Ryan Jungers of the Ridgeland Police Department was on his way to join other officers conducting a safety checkpoint near the Ross Barnett Reservoir spillway on Lake Harbour Drive in Ridgeland. As Jungers neared the checkpoint, cars began braking in front of him, and suddenly a car with its headlights off began driving toward him against traffic. The approaching car nearly struck Jungers's car and other cars head-on. Jungers activated his lights and sirens and turned around, but the car did not stop and drove away at a high rate of speed. The car turned south on Pear Orchard Road, crossed County Line Road, turned left onto Old Canton Road, and finally turned right on Pine Knoll Drive. The chase lasted approximately fifteen minutes, and the fleeing car ran multiple red lights and reached speeds approaching 100 miles per hour. The chase finally ended when the car turned into a residential neighborhood off Pine Knoll Drive and drove into a ditch at the end of a dead-end street. The driver and passenger quickly abandoned the car and fled on foot. Jungers gave chase and apprehended the passenger, Julian Smith, but the driver escaped. Smith was questioned, and he identified Gardner as the driver.

¶4.     Jungers conducted an inventory search of the car and found two prescription pill

bottles on the driver's side floorboard, one of which contained a partial marijuana blunt and a small amount of marijuana. The pill bottles' labels both showed prescriptions for Gardner. Jungers also found a small amount of "suspected cocaine" in the car. Testing confirmed that the substance was 0.17 grams of cocaine. In addition, Jungers found an Enterprise rental agreement signed by Gardner's mother in the car's glove box. Based on Smith's identification and the evidence in the car, a warrant was issued for Gardner's arrest.

¶5. Several days later, the United States Marshals Service arrested Gardner at his home. In April 2017, a grand jury indicted Gardner for possession of one-tenth of a gram but less than two grams of cocaine and felony evasion[1] as a subsequent drug offender and nonviolent habitual offender. Gardner's jury trial commenced in July 2018.

¶6. Smith testified he was with Gardner on the night of September 4, 2016. Smith stated that he knew Gardner from "just being in Jackson and living." Smith claimed that on the night in question, he and Gardner had been at a barbershop, and Gardner was giving him a ride home. As they approached the spillway on Lake Harbour Drive, they encountered a roadblock. Gardner then stopped the car in the middle of the road, made a U-turn, and began driving in the opposite direction. Both Gardner and Smith saw Jungers in pursuit. Smith

---

[1] A driver is guilty of a misdemeanor if he "willfully fails to obey" "a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime." Miss. Code Ann. § 97-9-72(1) (Rev. 2020). The offense is upgraded to a felony if it is committed "by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life." *Id.* § 97-9-72(2).

testified that he asked Gardner several times to stop the car so he could get out. Smith stated that after Gardner drove the car into a ditch, they both fled on foot. When Smith was apprehended, he told officers that Gardner had been driving the car. Smith denied that any of the drugs in the car belonged to him.

¶7. Gardner called two alibi witnesses at trial. His girlfriend, Crystal Gray, testified that Gardner was at home with her from 9 p.m. to 11 p.m. on the night in question. Gray said she did not know Smith. Gardner's sister, Tonya White, also testified that she was with Gardner and Gray that night.

¶8. Gardner also testified in his own defense. At the beginning of his direct examination, Gardner acknowledged that he had prior convictions for burglary and possession of codeine, having pled guilty to both charges. Gardner then stated that on the night in question, he was at his home with his girlfriend and their children. Gardner denied that he drove the car that Jungers pursued and denied that the drugs in the car belonged to him. Gardner testified that his brother knew Smith and had served time in federal prison with him. However, Gardner stated that he and Smith did not even know one another.

¶9. The jury convicted Gardner of both counts of the indictment. The court sentenced Gardner as a nonviolent habitual offender to serve consecutive terms of six years for cocaine possession[2] and five years for felony evasion in the custody of the Department of

---

[2] The maximum penalty of three years, Miss. Code Ann. § 41-29-139(c)(1)(B) (Rev. 2023), was doubled because Gardner was a subsequent drug offender, Miss. Code Ann. § 41-29-147 (Rev. 2023).

Corrections.[3]  At sentencing, Gardner's trial counsel represented to the court that he was "going to file an appeal."

¶10.    Unfortunately, Gardner's trial counsel did not file any post-trial motions and filed his notice of appeal fourteen days late.  After the record on appeal had been prepared and the appeal fully briefed, a divided Mississippi Supreme Court dismissed Gardner's appeal as untimely.[4]  *Gardner v. State*, 302 So. 3d 615 (Miss. 2020).[5]

¶11.    So Gardner filed an application in the Mississippi Supreme Court for leave to file a motion for post-conviction relief in the trial court.  Gardner requested an out-of-time appeal, arguing that his appeal was not perfected due to his trial counsel's ineffective assistance.  In response, the State agreed that Gardner was entitled to an out-of-time appeal.[6]  A panel of

---

[3] The maximum sentence was five years at the time of Gardner's offense and trial, Miss. Code Ann. § 97-9-72(2) (Rev. 2020), but has since been increased to ten years, Miss. Code Ann. § 97-9-72(2) (Supp. 2023).

[4] Gardner's previously dismissed appeal has been consolidated with the present appeal for purposes of the record.

[5] The dissent argued that the Court should suspend the rules pursuant to Rule 2(c) of the Mississippi Rules of Appellate Procedure and allow the appeal to proceed, stating: "Nothing in the record indicates that Gardner caused his appeal to be untimely filed.  His attorney simply did not perfect Gardner's appeal in a timely manner.  The defendant and the State fully briefed the appeal on the merits.  The appeal was days, not years, out of time, and this Court has the entire record before it.  In the interests of justice, this Court should address this appeal on the merits.  Additionally, judicial economy would be better served by addressing the appeal on the merits.  Dismissing the appeal will likely spark motions to suspend the rules and post-conviction relief petitions to allow an out-of-time appeal.  Addressing the appeal on the merits would consequently expedite the decision." *Id.* at 616-17 (¶8) (King, P.J., dissenting).

[6] *See Chapman v. State*, 250 So. 3d 429, 437 (¶26) (Miss. 2018) (stating that to obtain "an out-of-time appeal, the movant must show . . . that he asked his attorney to appeal within the time allowed," "that the attorney failed to perfect the appeal[,] and that such failure was

5

the Supreme Court then granted Gardner's request for an out-of-time appeal. *Gardner v. State*, No. 2023-M-00422 (Miss. June 28, 2023).

## ANALYSIS

¶12.    On appeal, Gardner argues that (1) the trial court erred by admitting evidence of his prior convictions for purposes of impeachment, (2) there is insufficient evidence to sustain his conviction for cocaine possession, (3) the trial court erred by giving a flight instruction, and (4) the trial court erred in sentencing him as a habitual offender.

¶13.    We conclude that the trial court abused its discretion by ruling that the State could use Gardner's prior convictions to impeach him, and we reverse and remand the case for a new trial on that ground. We also conclude that the evidence presented at trial was sufficient to sustain Gardner's conviction for cocaine possession.[7] Since we remand for a new trial, we decline to address Gardner's remaining issues on appeal.

### I.    Admissibility of Gardner's Prior Convictions

¶14.    After the State rested its case-in-chief, Gardner informed the court that he had decided to testify. The State then indicated that it intended to use Gardner's prior convictions to impeach him pursuant to Mississippi Rule of Evidence 609(a)(1)(B) and *Peterson v. State*,

---

through no fault of the movant" (emphasis omitted) (quoting *Diggs v. State*, 784 So. 2d 955, 956 (¶5) (Miss. 2001))).

[7] We are required to address Gardner's challenge to the sufficiency of the evidence even though we reverse and remand the case for a new trial on other grounds. *Newell v. State*, 175 So. 3d 1260, 1267-68 (¶5) (Miss. 2015). We address the issue because we would reverse and render Gardner's conviction for cocaine possession—and the Double Jeopardy Clause would bar a retrial on that count—if we concluded that the State had presented insufficient evidence to support the conviction. *Id.*

518 So. 2d 632 (Miss. 1987). Specifically, the State argued that it should be allowed to impeach Gardner by showing that he had been convicted of burglary of a dwelling in February 2010 and had been convicted of possession of codeine in July 2014. Defense counsel argued that the convictions should not be admitted because they were "prejudicial" and that neither conviction reflected negatively on Gardner's "veracity." Counsel further argued, "[W]hat's going to happen is we're going to tell the jury that he's been convicted of two crimes, and then that sort of seals the deal at that point." The trial court then ruled:

> In considering the *Peterson* factors, these – at least one of these crimes is not similar at all, that being the burglary of a dwelling. The defendant has had two prior witnesses – two alibi witnesses to testify on his behalf. In looking at all those *Peterson* factors, I believe that, considering everything, it weighs in favor of admissibility. And doing the 403 balancing test, I do find that the prejudicial effect of the admission of those convictions is not – excuse me, the probative value of the admission is not substantially outweighed by the prejudicial effect, so they will be admitted subject to a limiting instruction.

In light of the court's ruling, Gardner acknowledged on direct examination that he had prior convictions for burglary and possession of codeine.[8] In addition, the State questioned

---

[8] The State argues that Gardner waived this issue because after the trial court's in limine ruling, his own attorney brought out his prior convictions on direct examination. However, the Mississippi Supreme Court rejected this same argument in *McGee v. State*, 569 So. 2d 1191, 1194-95 (Miss. 1990) (emphasis added), *overruled on other grounds by White v. State*, 785 So. 2d 1059, 1062 (¶¶5-6) (Miss. 2001). There, the Court stated that following "an unequivocal trial court decision that the convictions were admissible, defense counsel employed what we all know to be conventional trial strategy. Faced with damaging evidence, counsel sensibly chose to be up front with the jury and have the defendant bare his breast to the end the jury would consider him candid on other issues as well. *In such circumstances we are not about to imply a waiver from* [*the defendant's*] *personal proffer of his prior convictions*." *Id.* (emphasis added). The State also argues that Gardner waived this issue because he did not sufficiently "challenge" the "trial court's *Peterson* analysis" during trial. This argument is also without merit. Gardner's trial counsel objected to the admission of the convictions and explained why they were more prejudicial than probative, and the trial court then ruled that the convictions were admissible under *Peterson*. Counsel's

Gardner about his prior convictions twice during his cross-examination, once near the beginning and again at the end.

¶15. On appeal, Gardner argues that the trial court erred by "only partially addressing one *Peterson* factor," failed to apply Rule 609's balancing test, and abused its discretion by admitting Gardner's prior convictions for impeachment purposes. We review the admission of evidence under Rule 609 for an abuse of discretion. *Robinson v. State*, 42 So. 3d 598, 602 (¶14) (Miss. Ct. App. 2010). "However, where a court has exercised its discretionary authority in such a way that it misperceives the correct legal standard for admitting the evidence, the deference customarily afforded trial courts in decisions concerning the admissibility of evidence is precluded, because the error has become one of law." *Trowbridge Partners L.P. v. Miss. Transp. Comm'n*, 954 So. 2d 935, 938 (¶8) (Miss. 2007) (quotation marks and brackets omitted). We "will reverse for erroneous interpretation or applications of the law." *Id.*

¶16. Under Rule of Evidence 609(a)(1), a testifying defendant may be impeached with evidence of a prior conviction if the crime "was punishable by death or by imprisonment for more than one year" and "the probative value of the evidence outweighs its prejudicial effect." In *Peterson*, the Mississippi Supreme Court held "that Rule 609(a)(1) requires the trial judge to make an on-the-record determination that the probative value of the prior conviction outweighs its prejudicial effect before admitting any evidence of a prior conviction." *Peterson*, 518 So. 2d at 636. The *Peterson* Court held that a trial court should

---

objection was sufficient to preserve the issue for appeal.

consider the following factors "when weighing the probative value of the convictions against the prejudicial effect of their admission":

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue.

*Id.* While a trial court "ought to consider [all these factors] in determining whether to allow in evidence of prior criminal acts for the purpose of impeachment, we do not apply [*Peterson*] so rigidly that we reject honest efforts by trial courts to carefully weigh the probative value of prior acts against their prejudicial effect for the purposes of impeachment." *Bush v. State*, 895 So. 2d 836, 848 (¶30) (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017).

¶17.   Here, the trial court failed to address all the *Peterson* factors. At best, the court specifically mentioned one factor and alluded to another. Moreover, the trial court applied the wrong balancing test. The court expressly stated that it was applying "the [*Rule*] *403* balancing test" and found that "the probative value of the [convictions *was*] *not substantially outweighed by* [*their*] *prejudicial effect*." (Emphasis added). The trial court correctly recited Rule 403, which provides that relevant evidence is admissible unless "its probative value is *substantially outweighed* by a danger of . . . unfair prejudice." MRE 403 (emphasis added). As this Court has explained, "Rule 403's scope is narrow, and it is an extraordinary measure

9

that should be used very sparingly." *Wallace v. State*, 369 So. 3d 83, 89 (¶19) (Miss. Ct. App. 2023) (brackets omitted) (quoting *Curry v. State*, 202 So. 3d 294, 298-99 (¶13) (Miss. Ct. App. 2016)). But this case is governed by Rule 609(a)(1)(B)'s balancing test, which provides that evidence of a testifying defendant's prior convictions must be *excluded* unless its "probative value . . . outweighs its prejudicial effect." Whereas Rule 403 tilts the scales "substantially" in favor of admitting relevant evidence, Rule 609(a)(1) tilts the scales *against* evidence of a defendant's prior convictions by requiring the State to show that the evidence's probative value actually "outweighs its prejudicial effect." Given the material difference between the two standards, the trial court's application of the wrong one is significant.

¶18. Based on a proper application of the *Peterson* factors, we further conclude that the trial court abused its discretion by admitting evidence of Gardner's prior convictions.

### 1. The Impeachment Value of the Prior Convictions

¶19. Gardner's prior convictions were for burglary and possession of codeine. This Court has stated that "we see little, if any, impeachment value in . . . prior burglary convictions." *Triplett v. State*, 881 So. 2d 303, 307 (¶15) (Miss. Ct. App. 2004); *accord Malone v. State*, 829 So. 2d 1253, 1260 (¶20) (Miss. Ct. App. 2002) (holding that "the impeachment value" of a prior burglary conviction "would be slight"). And in *Peterson*, the Supreme Court held that a prior felony conviction for possession of a controlled substance "ha[d] little, if any, impeachment value." *Peterson*, 518 So. 2d at 637. Accordingly, this factor weighs in favor of Gardner and against admission of the prior convictions.

### 2. The Point in Time of the Conviction and the Witness's Subsequent History

¶20. Gardner was convicted of burglary in 2010 and was convicted of possessing codeine in 2014. The incident at issue in this case occurred in 2016, and he was brought to trial in 2018. Gardner pled guilty to possessing codeine less than two years before the incident at this case, which weighs in favor of the admissibility of that conviction. *See id.* (holding that this factor weighed in favor of admissibility because the defendant's prior conviction occurred less than a year before the crime for which he was being tried). However, he pled guilty to burglary more than six years before the incident in this case and more than eight years prior to his trial, "lessening the[] probative value" of that conviction. *Townsend v. State*, 605 So. 2d 767, 770 (Miss. 1992) (seven-year-old burglary conviction); *accord Triplett*, 881 So. 2d at 307 (¶15) (noting that the defendant's prior conviction for receiving stolen property occurred eight years prior to trial and stating that "we see little probative value in the admission of an offense this old").

### 3. The Similarity Between the Past Crime and the Charged Crime

¶21. When a prior crime is similar to the crime for which the defendant is being tried, "the prejudicial effect of the conviction is very high." *Peterson*, 518 So. 2d at 637; *see also Settles v. State*, 584 So. 2d 1260, 1264 (Miss. 1991) ("The dangerous convictions are for crimes which are substantially similar to the crime charged . . . ."). Gardner's previous burglary conviction is not similar to either of his present charges, which weighs in favor of the admissibility of that conviction. However, Gardner's prior conviction for possessing codeine *is* similar to his present charge for possessing cocaine. Both codeine and cocaine are Schedule II drugs. *See* Miss. Code Ann. § 41-29-115(b) (Rev. 2023). Moreover, Officer

11

Jungers testified at trial that he found "some suspected codeine" in the subject vehicle, further linking Gardner's prior conviction to the present charge. "In such a situation the jury is very likely to infer present guilt from past conviction for a similar offense." *Peterson*, 518 So. 2d at 637. Therefore, "[t]he 'likeness' of the conviction and the present charge *weighs very heavily against admissibility*." *Id.* (emphasis added).

### 4. *The Importance of the Defendant's Testimony*

¶22.   In *Peterson*, a law enforcement officer testified that the defendant, Peterson, sold her marijuana, but Peterson testified that he could not have been involved in the drug sale because he was at home with his mother at the time of the alleged sale. *Id.* at 634. Peterson's mother testified and corroborated his testimony. *Id.* The Supreme Court stated,

> Peterson and his mother were the only defense witnesses. Under his theory of the case (alibi), Peterson was one of the only witnesses who could establish his defense. Rule 609(a)(1) aids in the search for truth by insuring that important testimony from the defendant will not be excluded because he fears the prejudicial effect his previous conviction might have on the jury. *The importance of Peterson's testimony weighs against the admissibility of the conviction.*

*Id.* at 637 (emphasis added).

¶23.   Likewise, Gardner testified that he could not have committed the subject crimes because he was at home at the time, and his girlfriend and sister corroborated his testimony. Gardner "was one of the only witnesses who could establish his defense." *Id.* Therefore, "[t]he importance of [his] testimony weighs against the admissibility of the conviction[s]." *Id.*; *accord Jordan v. State*, 592 So. 2d 522, 523 (Miss. 1991).

### 5. *The Centrality of the Credibility Issue*

¶24. In *Peterson*, the Supreme Court reasoned that Peterson's credibility was "important" because his alibi defense depended on it. *Peterson*, 518 So. 2d at 637. The Court held that "[t]he importance of his credibility . . . weigh[ed] in favor of the admissibility of his prior conviction, *but only to the extent, if any, that his prior conviction reflects adversely on his credibility*." *Id.* (emphasis added). In another case, the Court indicated that when the defendant's "prior convictions have little or no bearing on veracity or credibility," this factor carries little weight. *Jordan*, 592 So. 2d at 524.

¶25. As we explained under the first *Peterson* factor, Gardner's prior convictions for burglary and drug possession have little, if any, impeachment value. Therefore, although Gardner's credibility was an important issue at trial, this factor only weighs slightly, if at all, in favor of the admissibility of those prior convictions.

\* \* \* \* \*

¶26. In summary, the slight impeachment value of Gardner's prior burglary conviction was outweighed by the importance of Gardner's testimony to his alibi defense. In addition, the slight impeachment value of Gardner's prior conviction for drug possession was outweighed not only by the importance of his testimony but also by the prior conviction's "likeness" to his present charge for drug possession. Considering all five *Peterson* factors together, we cannot say that the slight probative value of Gardner's prior convictions "outweighs [their] prejudicial effect." MRE 609(a)(1)(B). Therefore, the convictions should not have been admitted for purposes of impeachment. Indeed, our analysis of the *Peterson* factors in this case is substantially similar to the Supreme Court's analysis in *Peterson*, where the Court

13

held that the erroneous admission of the defendant's one prior drug conviction required reversal of the conviction and a new trial. *See Peterson*, 518 So. 2d at 637-38.

¶27. In the present case, the trial court erred by making an incomplete analysis of the *Peterson* factors and by applying the wrong legal standard. The trial court applied "the [Rule] 403 balancing test" and found that "the probative value of [Gardner's prior convictions was] not substantially outweighed by [their] prejudicial effect." However, Rule 609 provides that prior convictions may not be admitted for impeachment unless their "probative value . . . outweighs [their] prejudicial effect." MRE 609(a)(1)(B). The prior convictions in this case cannot meet the Rule 609 test, and Gardner was unfairly prejudiced by their admission. Therefore, we are bound to reverse Gardner's convictions and remand the case for a new trial.

## II. Sufficiency of the Evidence

¶28. Gardner also argues the State's evidence was insufficient to support his cocaine possession conviction.[9] We review challenges to the sufficiency of the evidence de novo. *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018). "We view the evidence in the light most favorable to the prosecution to determine whether rational, reasonable fair-minded jurors could have found that the State proved each essential element of the crime." *Poole v. State*, 46 So. 3d 290, 293 (¶20) (Miss. 2010) (quotation marks and emphasis omitted). "[A]ll credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Johnson*

---

[9] We address this issue for the reason noted above in footnote 7. Gardner does not challenge the sufficiency of the evidence with respect to his conviction for felony fleeing.

14

*v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole*, 46 So. 3d at 293-94 (¶20). "Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all elements of the offense." *Williamson v. State*, 375 So. 3d 1158, 1167 (¶19) (Miss. Ct. App. 2023) (citing *Poole*, 46 So. 3d at 293-94 (¶20)).

¶29. "To support a conviction for possession of a controlled substance, there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Sills v. State*, 359 So. 3d 603, 610 (¶34) (Miss. 2023) (quotation marks and brackets omitted) (quoting *Glidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011)). "Possession may be actual or constructive." *Id*. (ellipses omitted) (quoting *Terry v. State*, 324 So. 3d 753, 755 (¶8) (Miss. 2021)). "With actual possession, the drug is actually found on the defendant's person (i.e., in his hands, mouth, pockets, etc.)." *Id.* at (¶35) (quotation marks and ellipsis omitted). "With constructive possession, the drug is simply found 'near' the defendant's person in a place over which the defendant exercises dominion and control." *Id.* (quotation marks omitted). "Thus, with constructive possession, the State has to prove the defendant was aware of the drug and intentionally, *but not necessarily physically*, in possession of it." *Id.* (quotation marks and brackets omitted). "The defendant's proximity to the drugs is a factor in establishing constructive possession, but it is not determinative." *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011). "Other incriminating circumstances must be

present to establish constructive possession." *Id.* Here, because Gardner was not alone in or in exclusive control of the subject vehicle, some "additional incriminating facts must connect [him] with the [drugs]." *Walker v. State*, 390 So. 3d 504, 509 (¶15) (Miss. 2024) (quoting *Powell v. State*, 355 So. 2d 1378, 1379 (Miss. 1978)).

¶30. Gardner argues that "[i]n the absence of evidence showing where [in the car] the police found the cocaine, there were not sufficient facts to warrant a finding beyond a reasonable doubt that Gardner was aware of the presence of the particular substance and was intentionally and consciously in possession of it." (Quotation marks and brackets omitted). In addition, Gardner argues that the State failed to show any additional "incriminating circumstances" connecting him to cocaine found in a car that he neither owned nor exclusively possessed.

¶31. As an initial matter, we agree with Gardner that the evidence failed to establish *where* in the car the cocaine was found. Jungers's testimony is unclear on this point. Jungers stated that he conducted an inventory search of the car and "[f]ound numerous different items, including some pills, suspected cocaine, some suspected codeine in different bottles, as well as two pill bottles that were on the driver's floorboard," "one of [which] contained a partial marijuana blunt and also a small amount of marijuana." Thus, Jungers testified that the two pill bottles (with Gardner's name on them) were found on the driver's floorboard, but he never specified where in the car the cocaine was found.

¶32. Nonetheless, there were other incriminating circumstances sufficient to support the jury's finding of constructive possession. To begin with, Smith—the car's only other

16

occupant—testified that the cocaine found in the car did *not* belong to him.[10]  In addition, Smith testified that Gardner was driving the car, that Gardner made a U-turn into oncoming traffic as soon as he saw the police roadblock, and that Gardner ignored Smith's pleas to stop the car and let him out.  Smith identified Gardner as the driver soon after he was apprehended and again at trial.  We must accept Smith's identification as true for purposes of our review of the sufficiency of the evidence.  *Poole*, 46 So. 3d at 293 (¶20); *Johnson*, 904 So. 2d at 166 (¶7).  Therefore, there was sufficient evidence for the jury to find that Gardner led police on a dangerous and prolonged high-speed chase before finally crashing the car into a ditch and fleeing on foot.  As our Supreme Court has stated, "[f]light is a circumstance from which an inference of guilt may be drawn and considered along with all the other facts and circumstances connected to the case."  *Burgess v. State*, 178 So. 3d 1266, 1278 (¶36) (Miss. 2015).  Here, the circumstances of Gardner's flight were extreme, and the jury logically could have inferred that Gardner fled in order to avoid arrest and prosecution for possessing cocaine.  Smith's identification and testimony at trial along with Gardner's extreme flight from the police roadblock provide sufficient evidence for a rational juror to find that Gardner constructively possessed the cocaine.  Accordingly, Gardner is not entitled to a judgment of acquittal on that charge.

## CONCLUSION

¶33.    The trial court applied the wrong legal standard and abused its discretion by admitting Gardner's prior convictions for purposes of impeachment under Rule 609.  However,

---

[10] On cross-examination, Smith admitted that he was in federal prison from 2005 to 2015 for possession of cocaine and was still on probation on September 4, 2016.

Gardner is not entitled to a judgment of acquittal on either charge because the State presented sufficient evidence to support his convictions. Therefore, we reverse Gardner's convictions and remand for a new trial on all charges.

¶34. **REVERSED AND REMANDED.**

**BARNES, C.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND WEDDLE, JJ., CONCUR. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY SMITH, J. EMFINGER, J., NOT PARTICIPATING.**

**CARLTON, P.J., DISSENTING:**

¶35. I dissent in part because I find that the trial court did not commit reversible error by admitting evidence of Gardner's prior convictions in this case. Rule 609(a)(1)(B) provides that a defendant may be impeached with evidence of a prior criminal conviction if the crime "was punishable by . . . imprisonment for more than one year" and "if the probative value of the evidence outweighs its prejudicial effect[.]" MRE 609(a)(1)(B). In applying this balancing test, the trial court must examine the prior convictions under the five-factor guidelines set forth in *Peterson v. State*, 518 So. 2d 632 (Miss.1987), as the majority has set forth above. *See* MRE 609 cmt. In this regard, as the majority acknowledges,

> While a trial court 'ought to consider [all these factors] in determining whether to allow in evidence of prior criminal acts for the purpose of impeachment, we do not apply [*Peterson*] so rigidly that we reject honest efforts by trial courts to carefully weigh the probative value of prior acts against their prejudicial effect for the purposes of impeachment.'

Maj. Op. at ¶16 (quoting *Bush v. State*, 895 So. 2d 836, 848 (¶30) (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017)).

¶36. In *Bush*, the supreme court observed that "[alt]hough th[e] trial judge did not directly

address *Peterson*'s five factors, it is apparent that he . . . satisfied the requirements of Rule 609(a)(1) by conducting a substantive balancing test in line with the spirit of *Peterson*." *Bush*, 895 So. 2d at 848 (¶30). Like the trial court in *Bush*, the trial court here did not address all five *Peterson* factors on the record. Unlike the majority, however, I find that the trial court's analysis was sufficient.

¶37. In ruling that the prior convictions were admissible, the experienced trial court judge considered the timing of Gardner's prior convictions, the similarity (and lack thereof) of Gardner's prior convictions to the current charges, and the importance of Gardner's testimony. And although the trial court framed the balancing test as being whether "the probative value of the admission is not substantially outweighed by the prejudicial effect," *see* MRE 403, I find that the trial court's analysis on the admissibility issue in this case was effectively the same as required pursuant to Rule 609(a)(1)(B) and not in error.

¶38. Accordingly, I do not find that allowing Gardner's prior convictions into evidence constituted reversible error. I find that this is particularly true here, where the trial court sua sponte admitted these prior convictions "subject to a limiting instruction" that explicitly cautioned the jury "that the evidence of prior convictions is not to be considered by you as evidence that the Defendant committed the crime charged in the Indictment, but may be considered by you only for the limited purpose of impeaching his credibility."

      **SMITH, J., JOINS THIS OPINION.**